UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
EZRA C. SULTAN,

                Plaintiff,

  -against-                           **MEMORANDUM AND ORDER**
                                         Case No. 18-934 (FB) (ST)
COINBASE, INC.,

                Defendant.
---------------------------------------------------x

*Appearances:*

| For the Plaintiff: | For the Defendant: |
|---|---|
| ROBERT L. LUM, ESQ. | PAUL MYUNG HAN KIM, ESQ. |
| The Dweck Law Firm LLP | Squire Patton Boggs (US) LLP |
| 10 Rockefeller Plaza, Suite 1015 | 30 Rockefeller Plaza |
| New York, New York 10020 | New York, New York 10112 |

**BLOCK, Senior District Judge:**

      In this diversity action, Ezra C. Sultan alleges that Coinbase, Inc., an online exchange for digital currencies like Bitcoin, negligently failed to prevent a scam that allowed a third party to steal more than $200,000 from his account. Coinbase moves to compel arbitration pursuant to a mandatory arbitration clause in its user agreement. For the following reasons, the motion is granted.

**I**

      "In deciding motions to compel, courts apply a 'standard similar to that applicable for a motion for summary judgment.'" *Nicosia v. Amazon.com, Inc.*, 834

1

F.3d 220, 229 (2d Cir. 2016) (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). The following facts are presented with that standard in mind.

Sultan created a Coinbase account on May 24, 2017, using a form on the company's website. As prompted by the site, Sultan entered his first name, last name, email address, and state of residence, and chose a password. Under the boxes for that information were two checkboxes. Next to the first was the statement, "I am not a Robot." Next to the second: "I certify that I am 18 years of age or older, and I agree to the User Agreement and Privacy Policy." Decl. of Justin Lyn, Ex. 2. The underlined terms were hyperlinks that, if clicked, took the user to webpages containing the full text of each document. The full text of the User Agreement contains the arbitration provision at issue:

> **7.2. Arbitration; Waiver of Class Action.** If you have a dispute with Coinbase, we will attempt to resolve any such disputes through our support team. **If we cannot resolve the dispute through our support team, you and we agree that any dispute arising under this Agreement shall be finally settled in binding arbitration, on an individual basis, in accordance with the American Arbitration Association's rules for arbitration of consumer-related disputes (accessible at https://www.adr.org/sites/aaa/faces/rules) and you and Coinbase hereby expressly waive trial by jury and right to participate and a class action lawsuit or class-wide arbitration.**

*Id.*, Ex. 1. Text in boldface type above also appears in bold on the web page.

According to Coinbase's "Disputes Analyst," Justin Lyn, an account cannot be created unless the user fills out all requested information and checks both boxes.

2

If the second box is not checked, the form remains on the screen with the added request, "Please accept the user agreement." *Id.*, Ex. 3. Consistent with Lyn's description, the log of Sultan's visit to the website contains the note "accepted_user_ agreement." *Id.*, Ex. 4.

Sultan alleges that, some months after opening his account, he called what he believed was Coinbase's customer support phone number to inquire about a pending transaction. The purported Coinbase representative he spoke to was, in fact, a hacker. Using personal information Sultan disclosed during the call, the hacker stole digital currency worth more than $200,000 from Sultan's Coinbase account. This lawsuit followed, with Sultan alleging that stronger security measures by Coinbase would have prevented the theft.

## II

The Federal Arbitration Act ("FAA") embodies "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Indeed, it even "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Schein v. Archer & White Sales, Inc.*, ___ U.S. ___, 2019 WL 122164, at *2 (Jan. 8, 2019).

However, the FAA also "reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 66 (2010). Thus, a court can order a dispute to arbitration only if, under the principles of contract law, "the court is satisfied that the parties agreed to arbitrate that dispute." *Granite Rock Co. v. International Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) (emphasis omitted).

"The threshold question of whether the parties indeed agreed to arbitrate is determined by state contract law principles." *Nicosia*, 834 F.3d at 229. Perhaps the most fundamental of those principles is that "there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Express Indus. & Terminal Corp. v. New York State Dep't of Transp.*, 93 N.Y.2d 584, 589 (1999). Assent may be manifested by words or conduct, but

> where the purported assent is largely passive, the contract-formation question will often turn on whether a reasonably prudent offeree would be on notice of the term at issue. In other words, where there is no actual notice of the term, an offeree is still bound by the provision if he or she is on *inquiry* notice of the term and assents to it through the conduct that a reasonable person would understand to constitute assent.

*Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 120 (2d Cir. 2012).

"While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract."

4

*Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004). "In the context of web-based contracts, we look to the design and content of the relevant interface to determine if the contract terms were presented to the offeree in [a] way that would put her on inquiry notice of such terms." *Starke v. SquareTrade, Inc.*, ___ F.3d ___, 2019 WL 149628, at *5 (2d Cir. Jan. 10, 2019). Two Second Circuit cases—*Nicosia*, cited above, and *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66 (2d Cir. 2017)—deal particularly with that issue. As the Second Circuit recently explained, "[t]he reasoning of *Nicosia* and *Meyer* provides the framework within which we analyze the validity of assent to terms and conditions presented through a web interface." *Starke*, ___ F.3d ___, 2019 WL 149628, at *7.

The website at issue in *Nicosia*—Amazon.com—allowed users to place an order by clicking "Place your order," but advised them elsewhere on the page that "[b]y placing your order, you agree to Amazon's <u>privacy notice</u> and <u>conditions of use</u>." 834 F.3d at 241. The second underlined phrase linked to the full text of the conditions of use, which included a mandatory arbitration provision. The circuit court concluded that reasonable minds could differ as to whether a prudent offeree had inquiry notice of the arbitration provision, relying on the following features of the interface:

- "[C]licking 'Place your order' does not specifically manifest assent to the additional terms, for the purchaser is not specifically asked whether she agrees or to say 'I agree.'"  *Id.* at 236.

- "Nothing about the 'Place your order' button alone suggests that additional terms apply, and the presentation of terms is not directly adjacent to the 'Place your order' button so as to indicate that a user should construe clicking as acceptance."  *Id.* at 236-37.

- "The message itself—'By placing your order, you agree to Amazon.com's ... conditions of use'—is not bold, capitalized, or conspicuous in light of the whole webpage."  *Id.* at 237.

- "There are numerous other links on the webpage, in several different colors, fonts, and locations, which generally obscure the message."  *Id.*

- "[T]he presence of customers' personal address, credit card information, shipping options, and purchase summary are sufficiently distracting so as to temper whatever effect the notification has."  *Id.*

The interface at issue in *Meyer*—a smartphone app for the ride-sharing service Uber—directed users to click "Register" to create an account.  *See* 868 F.3d at 76.  Underneath "Register" was the following notice:  "By creating an Uber account, you agree to the TERMS OF SERVICE & PRIVACY POLICY," with the underlined phrases linking to the respective documents.  *Id.*  In contrast to *Nicosia*, the circuit court concluded that "the design of the screen and language used render

the notice provided reasonable as a matter of California law." *Id.* at 78.[1]  It then described the salient features of the interface:

- "The Payment Screen is uncluttered, with only fields for the user to enter his or her credit card details, buttons to register for a user account or to connect the user's pre-existing PayPal account or Google Wallet to the Uber account, and the warning that 'By creating an Uber account, you agree to the TERMS OF SERVICE & PRIVACY POLICY.'" *Id.*

- "The text, including the hyperlinks to the Terms and Conditions and Privacy Policy, appears directly below the buttons for registration." *Id.*

- "The entire screen is visible at once, and the user does not need to scroll beyond what is immediately visible to find notice of the Terms of Service. Although the sentence is in a small font, the dark print contrasts with the bright white background, and the hyperlinks are in blue and underlined." *Id.*

- "[N]otice of the Terms of Service is provided simultaneously to enrollment, thereby connecting the contractual terms to the services to which they apply." *Id.*

Coinbase's interface is far closer to Uber's than Amazon's. The account creation screen contains only five fields and two checkboxes. As in *Meyer*, the "entire screen is visible at once," *id.*, with a minimalist layout and no distractions. The request to agree to the user agreement and privacy policy appears to be in a

---

[1] *Meyer* applied California law, *see* 868 F.3d. at 74, while *Nicosia* applied Washington law, *see* 834 F.3d at 231–32. New York's law of contract formation is substantially similar to the law of both those states. *See Starke*, ___ F.3d ___, 2019 WL 149628, at *6, nn.7, 8.

7

slightly smaller font than other text on the screen, but it is immediately above the "Create Account" button and "provided simultaneously to enrollment." *Id.*

Coinbase's interface is even clearer than Uber's in one important respect. "A putative [Uber] user is not required to assent explicitly to the contract terms." *See id.* at 76. Nor is a purchaser on Amazon.com. *See Nicosia*, 834 F.3d at 236 ("[C]licking 'Place your order' does not specifically manifest assent to the additional terms.").

Coinbase users, by contrast, must click a box certifying that they "agree to the User Agreement and Privacy Policy." Lyn Decl., Ex. 2. That is significant because even the implicit acceptance language in *Meyer* was "a clear prompt directing users to read the Terms and Conditions and signaling that their acceptance of the benefit of registration would be subject to contractual terms." 868 F.3d at 79. The explicit acceptance required here is an even clearer signal that a Coinbase account would be subject to terms and conditions, and an even stronger prompt to a reasonably prudent user to click on the link to see what those terms and conditions were before agreeing. *See id.* at 75 ("Courts routinely uphold [these so-called] clickwrap agreements for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'").

Sultan, therefore, had inquiry notice of the terms of the User Agreement. The only remaining question is whether Sultan, in fact, assented to those terms.

Sultan concedes that he created a Coinbase account by clicking the "Create Account" button, but argues that he "do[es] not recall being required to read or sign any User Agreement." Decl. of Ezra Sultan ¶ 6. Actual notice, however, is irrelevant. *See Meyer*, 868 F.3d at 74–75 ("Where there is no evidence that the offeree had actual notice of the terms of the agreement, the offeree will still be bound by the agreement if a reasonably prudent user would be on inquiry notice of the terms."). Thus, in *Meyer*, the court concluded that "[a] reasonable user would know that by clicking the registration button, he was agreeing to the terms and conditions accessible via the hyperlink, whether he clicked on the hyperlink or not." *Id.* at 79–80. As explained above, the case for inquiry notice is even stronger here than in *Meyer*.

Sultan further claims that he "do[es] not recall seeing or clicking [the verification] box," Sultan Decl. ¶ 5, although he does not flatly deny doing so. The declaration of Justin Lyn, on the other hand, is affirmative evidence that Sultan clicked the box and, indeed, that it would have been impossible for him to create an account without doing so. Sultan argues that Lyn failed to lay a foundation for his personal knowledge, but Lyn's reply declaration attests that he is familiar with both

9

the process by which user accounts are created and the manner in which user account information is logged. That is a sufficient foundation for his knowledge. *See Kasper Global Collection & Brokers, Inc. v. Global Cabinets & Furniture Mfrs., Inc.*, 952 F. Supp. 2d 542, 572–73 (E.D.N.Y. 2013) ("To be a qualified witness [regarding business records], the person who testifies need only show that he is 'familiar with the record-keeping system of the business in question and [knows] how the records were created.'" (quoting *Weinstein's Evidence Manual* § 16.07(2)(c))).[2]

Since a motion to compel arbitration is akin to a motion for summary judgment, *see Nicosia*, 834 F.3d at 229, a party opposing a properly supported motion "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Sultan's lack of recollection does not suffice. *See Kutluca v. PQ New York Inc.*, 266 F. Supp. 3d 691, 701 (S.D.N.Y. 2017) ("[F]ailing memories do not absolve a party from its contractual obligations . . . or create a triable issue of fact."); *Gonder v. Dollar Tree Stores, Inc.*, 144 F. Supp. 3d 522, 528 (S.D.N.Y. 2015) ("A mere assertion that one

---

[2] Sultan quibbles that Coinbase should not be allowed to lay a foundation for Lyn's testimony by way of a reply declaration. In the absence of any substantive dispute about Lyn's qualifications, the Court declines to allow Sultan to create a factual dispute over a technicality.

does not recall signing a document does not, by itself, create an issue of fact as to whether a signature on a document is valid—especially in the absence of any evidence the document was fabricated.").

### III

In sum, there is no dispute that Sultan had inquiry notice of the User Agreement, including its mandatory arbitration provision, and that he manifested his assent to that agreement. There being no dispute that this lawsuit is within the scope of the arbitration provision, Coinbase's motion to compel arbitration is granted. Since Coinbase has requested that the lawsuit be stayed pending arbitration, such a stay is granted. *See Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) ("We join those Circuits that consider a stay of proceedings necessary after all claims have been referred to arbitration and a stay requested.").

**SO ORDERED.**

    /S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
January 24, 2019